UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RUDOLPH BETANCOURT,
    Plaintiff,
vs.

4900 POWERLINE LLC d/b/a FORT
LAUDERDALE GRAND HOTEL,
    Defendants.

## COMPLAINT

Plaintiff, RUDOLPH BETANCOURT (hereinafter "Plaintiff"), by his undersigned, hereby files this Complaint and sues Defendants, 4900 POWERLINE LLC d/b/a FORT LAUDERDALE GRAND HOTEL (hereinafter "Defendants"), for injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*., (hereinafter the "A.D.A"), the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 (hereinafter the "ADAAG"), and the Florida Building Code.

## JURISDICTION & VENUE

**1.**  This Court has original jurisdiction over the action pursuant to 28 U.S.C., §§1331 and 1343 for Plaintiff's claims arising under 42 U.S.C. § 12181. *et seq*., based upon Defendants' violations of Title III of the ADA (see also, 28 U.S.C. §§ 2201 and 2202).

**2.**  The subject property is a Hotel located on or about 4900 Powerline Rd., Fort Lauderdale FL 33309 (hereinafter "Subject Premises").

**3.**  All events giving rise to this lawsuit occurred in the State of Florida. Venue is proper in this Court as the premises are located in the Southern District.

## PARTIES

4. Plaintiff, RUDOLPH BETANCOURT, is currently a resident of Fenwick, Michigan in the County of Montcalm, is *sui juris*, and is a qualified individual under the ADA and the FACBC.

5. Plaintiff is a double leg amputee who uses prosthetic devices or a wheelchair to ambulate, a Marine Corps veteran with several friends, family, and colleagues in South Florida including a son who is a minor league baseball athlete in South Florida who he frequently visits. Additionally, Plaintiff enjoys the South Florida weather and the multiple sporting events, festivals, and events that occur throughout South Florida.

6. Despite the physical limitations to which he is subjected as a result of his disability, Plaintiff continues to lead a full life, frequently travels, dines out, and is also an actively social and independent individual.

7. Defendant, 4900 POWERLINE LLC, is a Foreign Limited Liability Company which is authorized to and does transact business in the State of Florida and within this judicial district.

8. According to the Florida Department of Business and Professional Regulation, the Defendant, 4900 POWERLINE LLC, was licensed on February 21, 2018, to provide Hotel services and occupies 4900 Powerline Rd., Fort Lauderdale FL 33309 as a Hotel known as "Fort Lauderdale Grand Hotel".

9. The Subject Premises is owned and/or operated by the Defendants and is a public accommodation required by law to comply with the ADA and ADAAG.

## FACTUAL ALLEGATIONS AND CLAIM

10. Plaintiff recently visited the Subject Premises on or about January 5, 2023 to January 6, 2023 to stay in the Hotel overnight and accessed to the extent possible, or attempted to access the Subject Premises and specific areas of the Subject Premises as described herein.

11. While visiting the Subject Premises, Plaintiff personally encountered or observed several barriers to access in violation of the ADA and ADAAG as detailed further herein at Paragraph 15. As a result, Plaintiff has been denied access to the Subject Premises and full and equal enjoyment of the goods and services offered therein because of his disability and will continue to be denied such access as a result of those barriers.

12. Said barriers to access at the Subject Premises endanger the safety of Plaintiff and all other individuals with disabilities, deny Plaintiff and others with disabilities equal access to the Subject Premises as to that of able-bodied persons, and causes social embarrassment due to the difficulties encountering such barriers to access—a social embarrassment that would not occur if the Subject Premises was in compliance with the ADA and ADAAG.

13. In encountering the barriers to access at the Subject Premises, and suffering the resulting discrimination, endangerment, and embarrassment—the Plaintiff sustained a lawful injury-in-fact pursuant to the ADA.

14. Pursuant to the mandates of 42 U.S.C. §12134(a), on September 15, 2010, the Department of Justice, Office of the Attorney General, published revised regulations for Title III of the Americans with Disabilities Act of 1990 in the Federal Register to implement the requirements of the ADA. Public accommodations were required to conform to these regulations on or before March 15, 2012.[1]

---

[1] "Safe Harbor. Elements that have not been altered in existing facilities on or after March 15, 2012, and that comply with the corresponding technical and scoping specification for those elements in the 1991 Standards are not required

15.     A specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which preclude and/or limit Plaintiff's ability (because of his disability) to access the Facility and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Facility include:

### Maintenance

I. The accessible features of the facility are not maintained, creating barriers to access for the plaintiff, as set forth herein, in violation of 28 CFR §36.211.

### Accessible Parking

II. There is no marked access aisle at the passenger loading zone adjacent to the vehicle pull-up space making it difficult for the plaintiff to utilize, in violation of section 503.3 of the 2010 ADA Standards, whose resolution is readily achievable.

III. The abrasive crack in the accessible parking stall and access aisle has a vertical change in level that exceeds the maximum requirement of ¼ inch making it difficult for the plaintiff to traverse, in violation sections 303.2 and 502.4 of the 2010 ADA Standards, whose resolution is readily achievable.

IV. The accessible parking signage does not meet the minimum requirement of 60 inches above the finished ground making it difficult for the plaintiff to locate, in violation of section 502.6 of the 2010 ADA Standards, whose resolution is readily achievable.

### Accessible Routes

V. The curb ramp leading to the hotel entrance is projecting into the access aisle from the accessible parking creating a slope that exceeds 2.1% making it difficult for the plaintiff to traverse, in violation of sections 502.3.4 and 502.4 of the 2010 ADA Standards, whose resolution is readily achievable.

VI. The curb ramp has side flares that exceed the maximum requirement of 10% making it difficult for the plaintiff to traverse, in violation of section 406.3 of the 2010 ADA Standards, whose resolution is readily achievable.

### Main Lobby Entrance

VII. The main entrance door does not provide signage with the international symbol of accessibility as required making it difficult for the plaintiff to distinguish the accessible entrance, in violation of sections 216.6 and 703.7.2.1 of the 2010 ADA Standards, whose resolution is readily achievable.

VIII. The floor mat at the main entrance door is not securely attached to the floor as required making it difficult for the plaintiff to enter and exit the hotel, in

---

to be modified in order to comply with the requirements set forth in the 2010 Standards" 28 CFR §36.304(d)(2)(i), however, the violations described herein violate both the 1991 Standards as well as the 2010 Standards.

IX. violation of section 302.2 of the 2010 ADA Standards, whose resolution is readily achievable.

IX. The lowered section of the service counter does not provide clear floor space for an approach making it difficult for the plaintiff to utilize, in violation of sections 305.7.1, 305.7.2, and 309.2 of the 2010 ADA Standards, whose resolution is readily achievable.

**Accessible Guestroom 139**

X. The Hotel does not provide the required amount of compliant accessible guest rooms and the accessible rooms are not dispersed among the various classes of accommodations, in violation of section 224.2 of the 2010 ADA Standards, whose resolution is readily achievable.

XI. The security latch exceeds the maximum height requirement of 48 inches above the finish floor to the operable mechanism making it difficult for the plaintiff to reach, in violation of sections 308.2.1, 308.3.1, and 309.3 in the 2010 ADA Standards, whose resolution is readily achievable.

XII. The curtain rods exceed the maximum height requirement of 48 inches above the finish floor making it difficult for the plaintiff to utilize, in violation of sections 308.2, 308.3, and 309.3 of the 2010 ADA Standards, whose resolution is readily achievable.

XIII. The clear floor space for an approach to the sink, kitchen appliances, and kitchen counter is obstructed by the dining table, the dining chairs, and the cabinet making it difficult for the plaintiff to maneuver through the kitchen, in violation of sections 305.3 and 309.2 of the 2010 ADA Standards, whose resolution is readily achievable.

XIV. The bed is obstructing the clear floor space for an approach to the night stand and lamp making it difficult for the plaintiff to utilize, in violation of sections 305.3 and 806.2.3 of the 2010 ADA Standards, whose resolution is readily achievable.

XV. The closet shelf, hanger rack, and iron exceed the maximum height requirement of 48 inches above the finish floor making it difficult for the plaintiff to utilize, in violation of sections 308.2, 308.3, and 309.3 of the 2010 ADA Standards, whose resolution is readily achievable.

XVI. The bathroom door does not provide 60 inches of latch side maneuvering clearance perpendicular to the doorway due to the obstruction of the bed making it difficult for the plaintiff to enter and exit the restroom, in violation of Section 404.2.4.1 of the 2010 ADA Standards, whose resolution is readily achievable.

XVII. The mirror exceeds the maximum height requirement of 40 inches above the finish floor to the reflecting surface making it difficult for the plaintiff to utilize, in violation of section 603.3 of the 2010 ADA Standards, whose resolution is readily achievable.

XVIII. The cabinet obstructs the required knee and toe clearance underneath the lavatory making it difficult for the plaintiff to utilize, in violation of sections 806.2.4, 606.2, 306.2, and 306.3 of the 2010 ADA Standards, whose resolution is readily achievable.

| | |
|---|---|
| XIX. | The hair dryer is located above the maximum height requirement of 48 inches above the finish floor making it difficult for the plaintiff to utilize, in violation of sections 308.2, 308.3, and 309.3 of the 2010 ADA Standards, whose resolution is readily achievable. |
| XX. | The table obstructs the clear floor space for an approach to the towel storage shelf making it difficult for the plaintiff to reach, in violation of sections 305.3 and 305.6 in the 2010 ADA Standards, whose resolution is readily achievable. |
| XXI. | The toilet paper dispenser is not located on the side wall 7 inches minimum and 9 inches maximum in front of the water closet measured from the centerline of the dispenser making it difficult for the plaintiff to utilize, in violation of sections 806.2.4 and 604.7 of the 2010 ADA Standards, whose resolution is readily achievable. |
| XXII. | The water closet's side wall grab bar does not extend 54 inches from the rear wall making it difficult for the plaintiff to transfer onto the seat, in vio |
| XXIII. | The lavatory and trash can obstructs the water closet's 60 inches of perpendicular clearance from the side wall making it difficult for the plaintiff to utilize, in violation of sections 806.2.4, 604.3.1, and 604.3.2 of the 2010 ADA Standards, whose resolution is readily achievable. |
| XXIV. | The standard roll-in type shower does not provide a permanent folding seat in the compliant location as required in transient lodging making it difficult for the plaintiff to utilize, in violation of sections 213.3.6, 806.2.4, 608.4, and 610.3 of the 2010 ADA Standards, whose resolution is readily achievable. |
| XXV. | The standard roll-in type shower does not provide grab bars in the compliant locations on the walls where a seat is required making it difficult for the plaintiff to utilize, in violation of sections 806.2 and 608.3.2 of the 2010 ADA Standards, whose resolution is readily achievable. |
| XXVI. | The standard roll-in type shower compartment does not provide a 60 inch wide minimum entry on the face of the shower making it difficult for the plaintiff to utilize, in violation of section 608.2.2 of the 2010 ADA Standards, whose resolution is readily achievable. |
| **XXVII.** | The standard roll-in type shower does not provide a hand-held shower spray unit with a hose 59 inches long minimum that can also be used as a fixed-position shower head making it difficult for the plaintiff to utilize, in violation of sections 806.2.4 and 608.6 of the 2010 ADA Standards, whose resolution is readily achievable. |
| XXVIII. | The shower controls and hand held shower spray unit are not in the compliant location on the back wall where the seat is required in transient lodging making it difficult for the plaintiff to utilize, in violation of section 608.5.2 of the 2010 ADA Standards, whose resolution is readily achievable. |

16. The above listing is not to be considered all-inclusive of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Facility. Plaintiff requires an

inspection of the Facility in order to photograph, measure and determine all of the discriminatory acts violating the ADA.

17. The removal of the physical barriers, dangerous conditions and ADA violations set forth herein is readily achievable and can be accomplished and carried out without much difficulty or expense pursuant to 42 U.S.C. § 12182(B)(2)(A)(iv); 42 U.S.C. § 12181(9); and 28 C.F.R, § 36.304.

18. The ADA defines "readily achievable as "easily accomplishable and without much difficult or expenses."42 U.S.C. §12181(9) Congress included in the ADA factors to be considered in evaluating whether removal of a barrier is "readily achievable." These factors are (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity, and (10)geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. <u>Garthright-Dietrich v. Atlanta Landmarks, Inc</u>., 452 F. 3d 1269, 1272-73 (11th Cir. 2006).

The obligation to engage in readily achievable barrier removal is a continuing one. Over time, barrier removal that initially was not readily achievable may later be required because of changed circumstances. DOJ ADA Title III Technical Assistance Manual, Section III-4.4400 Continuing obligation.

19. Because, *inter alia,* this facility was designed, constructed, and received its State Licensure on February 21, 2018, Plaintiff asserts that said ADA violations are intentional in nature and will not be corrected absent Court intervention, thus exacerbating the intentional legal harm and injury to which Plaintiff has been and will continue to be subjected in the future.

20. Plaintiff will undoubtedly return to the Subject Premises once the barriers to access have been remediated—not only to avail himself of the goods and services available at the Subject Premises, but to confirm and assure himself that the Subject Premises has been brought into compliance with the ADA and *maintained* in compliance with the ADA so that Plaintiff and other persons with disabilities will have equal access to the Subject Premises without fear of discrimination, endangerment of their safety, or social and public embarrassment.

21. Independent of his personal desire to access this place of public accommodation as required by law, Plaintiff is an advocate of the rights of similarly situated persons with disabilities and an advocate for asserting his own civil rights. However, Plaintiff is deterred from returning to the Subject Premises as long as the Defendants continue to operate the Subject Premises in violation of the ADA and ADAAG.

22. Plaintiff has a realistic, credible, and continuing threat of discrimination by the Defendants as long as the Subject Premises remains in non-compliance with the ADA.

23. Defendants have discriminated against Plaintiff and others with disabilities by denying access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Facility, as prohibited by 42 U.S.C., § 12182, *et. seq.*, and by failing to remove architectural barriers as required by 42 U.S.C., § 12182(b)(2)(A)(iv) and will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants are compelled to remove all physical barriers that exist at the Facility, including

those specifically set forth herein, and make the Facility accessible to and usable by persons with disabilities, including Plaintiff.

24. Plaintiff has suffered and continues to suffer direct and indirect injury as a result of the ADA violations that exist at the Subject Premises and the actions or inactions described herein.

25. Plaintiff is without adequate remedy at law and is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Facility, including those set forth herein.

26. Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action. The Plaintiff is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendants, pursuant to 42 U.S.C., §§ 12205 and 12217.

27. Pursuant to 42 U.S.C. §12188(a), this Court is provided with authority to grant injunctive relief to Plaintiff, including an order to alter the subject Facility to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, and closing the subject Facility until the requisite modifications are completed.

**WHEREFORE,** Plaintiff respectfully requests that the Court issue a permanent injunction enjoining Defendants from continuing is discriminatory practices, ordering Defendants to remove the physical barriers to access and alter the subject Facility to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, closing the subject Facility until the barriers are removed and requisite alterations are completed, and awarding Plaintiff his reasonable attorney's fees, expert fees, costs and litigation expenses incurred in this action.

Respectfully submitted,

s/ Glenn R. Goldstein
Glenn R. Goldstein, Esq. (FBN: 55873)
   *Attorney for Plaintiff*
Glenn R. Goldstein & Associates, PLLC
8101 Biscayne Blvd., Ste. 504
Miami, Florida 33138
(305) 900-2373
GGoldstein@G2Legal.net

s/ Lauren N. Wassenberg
Lauren N. Wassenberg, Esq. (FBN: 34083)
   *Attorney for Plaintiff*
Lauren N. Wassenberg & Associates, P.A.
1825 NW Corporate Blvd., Ste. 110
Boca Raton, FL 33431
(561) 571-0646
WassenbergL@gmail.com